[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-12623
Non-Argument Calendar

_____

D.C. Docket No. 5:10-cv-00367-WTH-PRL


ROBERT F. DUGAN,

                                                              Plaintiff-Appellant,


versus


WARDEN, FCC COLEMAN - USP I,
A. KENDRICK,
Dental Assistant - FCC Coleman USP 1,
U. VARGAS,
Assistant Health Service Administrator, FCC Coleman USP 1,
FRANCISCO SANTOS,
Unit Manager (H-Unit), FCC Coleman USP 1,
C. BAKER,
Counselor, FCC Coleman USP 1, et al.,

                                                              Defendants-Appellees.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 21, 2016)

Before TJOFLAT, WILLIAM PRYOR, and EDMONDSON, Circuit Judges.

PER CURIAM:

Robert Dugan, a federal prisoner proceeding pro se,[1] appeals the district court's orders (1) dismissing Dugan's claims against the United States filed pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1) ("FTCA"); (2) granting summary judgment in favor of Defendant prison officials on Dugan's FTCA and Bivens[2] claims; (3) denying or limiting Dugan's discovery motions; and (4) denying Dugan's motions to appoint counsel and to appoint expert witnesses. Briefly stated, Dugan alleges that prison officials violated his Eighth Amendment rights by acting with deliberate indifference to his serious dental care needs, and by depriving him of sanitation and personal hygiene supplies. No reversible error has been shown; we affirm.

---

[1] We construe liberally pro se pleadings. Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).

[2] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 91 S. Ct. 1999 (1971).

2

I.

Dugan asserted a claim against the United States[3] under the FTCA, alleging that the Bureau of Prisons ("BOP") failed to provide him with personal hygiene supplies and showers during a 9-day prison lockdown in February 2010.  The district court dismissed the claim for lack of subject matter jurisdiction after concluding that the discretionary function exception to the FTCA applied.

We review de novo whether the government is entitled to application of the discretionary function exception to the FTCA.  Cohen v. United States, 151 F.3d 1338, 1340 (11th Cir. 1998).

The FTCA waives the government's sovereign immunity from tort suits for the negligent or wrongful acts or omissions of government employees acting within the scope of their employment.  See 28 U.S.C. § 1346(b)(1); Suarez v. United States, 22 F.3d 1064, 1065 (11th Cir. 1994).  The discretionary function exception to the FCTA, however, precludes government liability for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government."  28 U.S.C. § 2680(a).  In determining whether the discretionary

---

[3] The district court construed Dugan's official-capacity FTCA claims against the individual prison officials as claims against the United States.

3

function exception applies in a particular case, we consider (1) whether the conduct at issue involves "an element of judgment or choice," and, if so, (2) "whether that judgment is grounded in considerations of public policy." Cohen, 151 F.3d at 1341.

The district court committed no error in concluding that the discretionary function exception applied to Dugan's FTCA claim against the United States. Although the BOP owes a general duty of care to safeguard federal prisoners, to "make available . . . those articles necessary for maintaining personal hygiene," and to provide inmates "an opportunity to shower regularly,"[4] the BOP retains considerable discretion to determine the means by which it will fulfill these duties. Cf. Cohen, 151 F.3d at 1342 ("[E]ven if § 4042 imposes on the BOP a general duty of care to safeguard prisoners, the BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception."). For instance, the BOP maintains discretion to decide the manner and frequency with which personal hygiene items and showers will be made available: details which are not specified by statute or regulation.

Having determined that the complained-of conduct "involves an element of judgment or choice," we next conclude that the judgment of making personal

---

[4] See 18 U.S.C. § 4042(a)(2); 28 C.F.R. § 551.6; BOP Program Statement #5270.09, App. C, Item #4, available at https://www.bop.gov/policy/progstat/5270_009.pdf.

4

hygiene supplies and showers available to inmates -- especially during a prison lockdown -- is grounded in public policy considerations. See Cohen, 151 F.3d at 1341. First, where "a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." United States v. Gaubert, 111 S. Ct. 1267, 1274 (1991). Here, in the case of a prison lockdown, prison staff must necessarily balance competing policy concerns, including inmate and staff safety, efficient supervision of inmates, and allocation of resources. Because the nature of the complained-of conduct is "susceptible to policy analysis," it satisfies the criteria of the discretionary function exception. See id. at 1275. The district court was thus required to dismiss Dugan's FTCA claim for lack of subject matter jurisdiction. See Cohen, 151 F.3d at 1340.

## II.

We next address the district court's dismissal -- for failure to exhaust administrative remedies -- of Dugan's remaining FTCA claims based both on an alleged ongoing deprivation of sanitation and personal hygiene supplies and on a

5

delay of dental care.  About both claims, Dugan filed grievances under the BOP's Administrative Remedy Program, in which he also sought monetary damages.  In response to his requests, Dugan was notified that monetary damages were unavailable through the Administrative Remedy Program.  To the extent Dugan sought monetary damages, he was instructed expressly that he needed to file a separate administrative tort claim form pursuant to the FTCA.  Although Dugan later submitted the proper tort claim form, he alleged only a deprivation of personal hygiene supplies during the February 2010 lockdown.  Because Dugan failed to pursue with the appropriate agency his tort claims based on the alleged ongoing deprivation of sanitation and personal hygiene supplies and a delay in dental care, he has failed to exhaust his administrative remedies on those claims.  See 28 C.F.R. § 542.10(c); Burchfield v. United States, 168 F.3d 1252, 1254 (11th Cir. 1999).  Thus, the district court dismissed properly Dugan's claims for lack of jurisdiction.  See Burchfield, 168 F.3d at 1254-55.

## III.

Dugan next challenges the district court's grant of summary judgment in favor of Defendants Warden Middlebrooks, Santos (Unit Manager), Baker

6

(Counselor), Vargas (Assistant Health Service Administrator), and Kendrick (dental assistant) on his Eighth Amendment claim under Bivens for delay in dental care.[5]  Dugan alleged Defendants were deliberately indifferent to his serious medical need when they failed to provide "prompt and effective dental treatment for two cracked, broken, crumbling teeth in which the fillings had fallen out."  As a result, Dugan contends he suffered pain, cuts, and bleeding gums, tongue, and lips.

Between April 2007 and February 2010, Dugan submitted several written requests for treatment for two teeth in which the fillings had fallen out.  During that time, Dugan was also seen three times by the prison dentist: (1) in June 2007, the dentist placed a temporary filling in one of Dugan's teeth; (2) in October 2008, the dentist examined Dugan's teeth, filed down the jagged edges, and told Dugan his fillings would be repaired at another appointment; and (3) in December 2009, the dentist examined Dugan's teeth and took an x-ray, and told Dugan he was on the waiting list to get his fillings fixed.  In October 2009, Dugan also began filing written grievances with prison administrators, complaining about the delay in his dental care.

To demonstrate that a prison official was deliberately indifferent to a prisoner's serious medical needs, in violation of the Eighth Amendment, a prisoner

---

[5] We review de novo the district court's grant of summary judgment, considering all evidence in the light most favorable to the non-moving party.  Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007).

must satisfy both an objective and a subjective component. Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011). First, a prisoner must show that he had "an objectively serious medical need," and "that the prison official's response to that need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." Id. at 1176 (quotation omitted).

Second, "[a] prisoner must also show a prison official's subjective intent to punish by demonstrating that the official acted with deliberate indifference." Id. To prove deliberate indifference, the prisoner must demonstrate "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Id. "Conduct that is more than mere negligence" includes, among other things, "grossly inadequate care" and "medical care that is so cursory as to amount to no treatment at all." Id. Deliberate indifference may be shown either (1) based on the prison medical staff's response to a prisoner's medical needs, or (2) when a prison official denies or delays intentionally a prisoner's access to medical care or interferes intentionally with a prisoner's prescribed treatment. Estelle v. Gamble, 97 S. Ct. 285, 291 (1976).

8

As an initial matter, to the extent Dugan contends Defendant prison officials should be held liable solely in their supervisory capacity, his argument fails as a matter of law.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

With respect to Dugan's deliberate indifference claim against Defendants Middlebrooks, Santos, Baker, and Vargas, these Defendants' personal involvement in Dugan's dental care was limited to receiving and responding to Dugan's written requests for dental treatment.[6]  None of these individual Defendants were involved directly in providing dental care at the prison or in determining what care Dugan should receive.  None could have personally fixed his teeth.  In response to Dugan's requests, Defendants Middlebrooks, Santos, and Baker advised Dugan correctly that he was on the waiting list to receive routine dental care which, according to BOP policy, included dental fillings.[7]  Warden Middlebrooks also

---

[6] Dugan's claim against Defendant Vargas appears to be based only on a February 2010 written request for dental treatment that Dugan addressed to Vargas.  Nothing evidences, however, that Vargas in fact received Dugan's request and the record contains no response to Dugan's February 2010 request.

[7] According to BOP policy, fillings are considered a routine dental procedure.  To receive routine dental care, "inmates must be on the waiting list for care and care will be provided in chronological order; i.e., those waiting the longest will be seen first."  "Urgent dental care" is defined as "treatment for relief of severe, acute dental pain, traumatic injuries, and acute

9

noted -- based on his investigation of Dugan's complaint -- that Dugan had (at that time) twice reported to sick call where he had received treatment for his broken fillings. The record demonstrates that, in responding to Dugan's requests, Defendants relied on the prison dentist's assessment and treatment of Dugan's medical condition and acted in accordance with BOP policy. Because nothing evidences that Defendants denied or further delayed intentionally Dugan's access to appropriate dental care, or otherwise interfered intentionally with Dugan's dental treatment, Defendants are entitled to summary judgment on Dugan's claim for deliberate indifference. See Estelle, 97 S. Ct. at 291; Bingham, 654 F.3d at 1176.

Similar to the Defendant prison administrators, Defendant Kendrick also had limited personal involvement in Dugan's dental care. In response to three of Dugan's written requests for dental treatment, Kendrick said that Dugan was on the waiting list for routine care and directed Dugan to report to sick call if he experienced pain, an acute dental infection, or a tooth requiring extraction. The record evidences that Dugan in fact reported to dental sick call at least three times, during which he was evaluated and treated by the prison dentist. Although

---

infections" and is prioritized based on the level of urgency with which a prisoner presents at sick call. See BOP Program Statement #6400.03, available at https://www.bop.gov/policy/progstat/6400_003.pdf.

Kendrick was present during one of these sick call visits, nothing evidences that Kendrick -- as opposed to the prison dentist -- made medical decisions about Dugan's dental treatment, or that Kendrick herself provided "grossly inadequate care" or care that was "so cursory as to amount to no treatment at all."  Moreover, that Dugan disagreed with the prison dental staff's assessment about the urgency of Dugan's dental condition is insufficient to support an Eighth Amendment violation.  See Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991).  Because nothing evidences that Kendrick acted subjectively with deliberate indifference to Dugan's serious medical need, the district court committed no error in granting Kendrick summary judgment.  See Bingham, 654 F.3d at 1176.

IV.

Dugan next challenges the district court's grant of summary judgment in favor of Defendants Middlebrooks, Santos, Baker, Vargas, and Rutherford on Dugan's Eighth Amendment claim under Bivens based on the alleged ongoing deprivation of sanitation and personal hygiene supplies.

To survive summary judgment on an Eighth Amendment conditions-of-confinement claim, a prisoner must demonstrate that the complained-of condition

11

is "extreme" such that the condition "poses an unreasonable risk of serious damage to his future health or safety," and that "defendant prison officials acted with a sufficiently culpable state of mind with regard to the condition at issue." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (quotation omitted). "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian, 112 S. Ct. 995, 1000 (1992) (quotation and citation omitted).

In support of his Eighth Amendment claim, Dugan alleges that, between 2007 and 2010, prison staff refused "often and repeatedly" to provide him with bar soap, scouring cleanser and other basic sanitary and personal hygiene supplies, and refused to provide him with personal hygiene supplies and showers during the February 2010 lockdown. As a result, Dugan contends he suffered from "colds, flus, rashes, sores on skin, diarrhea, infections, MRSA, and/or . . . risks of those and other diseases." The record demonstrates that Dugan sought medical care four times between 2007 and 2010 for skin rashes or for flu-like symptoms. On each occasion, Dugan received treatment from prison medical staff. Nothing evidences

12

that Dugan was ever infected with MRSA or that Dugan's medical conditions were caused by unsanitary prison conditions.

On this record, Dugan has failed to establish that the conditions of his confinement posed "an unreasonable risk of serious damage to his future health or safety" such that they rose to the level of an Eighth Amendment violation. Moreover, Dugan has failed to demonstrate that Defendants acted with deliberate indifference to the alleged unsanitary conditions or otherwise caused Dugan to have a serious medical need. See Goebert, 510 F.3d at 1326-27. The district court granted properly summary judgment in favor of Defendants.

V.

Our review of a district court's rulings on discovery is "limited": decisions about discovery "are entrusted to the sound discretion of the trial court and are reviewed only for abuse of discretion." Burger King Corp. v. Weaver, 169 F.3d 1310, 1315 (11th Cir. 1999). "[W]e will not overturn discovery rulings unless it is shown that the . . . ruling resulted in substantial harm to the appellant's case." Iraola & CIA., S.A. v. Kimberly-Clark Corp., 325 F.3d 1274, 1286 (11th Cir. 2003) (quotations omitted).

13

The district court abused no discretion in denying or in limiting Dugan's discovery motions.  First, Dugan contends that the prison's daily logs would have shown that only his unit -- not the entire prison -- was on lockdown in February 2010.  This distinction, however, has no bearing on the outcome of Dugan's claims about the deprivation of personal hygiene supplies during the lockdown.  Second, because Dugan's deprivation claim related only to the February 2010 lockdown, Defendants' failure to produce the dates of all prison lockdowns resulted in no substantial harm to Dugan's case.

We also reject Dugan's contention that the district court erred in failing to address Dugan's renewed motion to compel, for sanctions, and for a discovery conference before ruling on Defendants' motions to dismiss and for summary judgment.  Although Defendants failed to produce Dugan's complete medical record, Dugan submitted to the district court all medical records pertinent to his claims.  Dugan, thus, suffered no substantial harm.  On this record, the district court abused no discretion in limiting or in denying Dugan's motions about discovery.

14

VI.

Dugan next contends that the district court abused its discretion by (1) denying his renewed motions for appointment of counsel and (2) denying his motion to appointment of expert witnesses.

First, the district court abused no discretion in denying Dugan's renewed motions for appointment of counsel. The count appointed counsel initially to assist Dugan in locating and in serving three defendants. After Dugan's second court-appointed lawyer withdrew his representation, Dugan filed a renewed motion for appointment of counsel. By that time, the three unserved defendants had been dismissed from the case and, thus, the initial reason justifying appointment of counsel no longer existed. Because Dugan's case presented no novel or complex issues, and because Dugan had shown that he could represent himself adequately, he has demonstrated no exceptional circumstances warranting appointment of counsel. See Kilgo v. Ricks, 983 F.2d 189, 193 (11th Cir. 1993) ("Appointment of counsel in civil cases is . . . a privilege justified only by exceptional circumstances, such as the presence of facts and legal issues which are so novel or complex as to require the assistance of a trained practitioner." (quotation and alteration omitted)).

15

The district court also abused no discretion in denying Dugan's motion for appointment of expert witnesses to testify about whether Dugan's dental treatment fell below the standard of care. The court concluded properly that the proposed expert witness testimony would not have assisted the court in determining whether Dugan had exhausted his administrative remedies or whether the individual Defendants were entitled to summary judgment.

AFFIRMED.

16